(Slip Opinion) OCTOBER TERM, 2007 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KENTUCKY RETIREMENT SYSTEMS ET AL. *v.* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 06–1037. Argued January 9, 2008—Decided June 19, 2008

Kentucky permits "hazardous position" workers, *e.g.,* policemen, to receive normal retirement benefits after working either 20 years or 5 years and attaining age 55 and pays "disability retirement" benefits to workers meeting specified requirements. Kentucky's "Plan" calculates normal retirement benefits based on actual years of service. The Plan calculates disability benefits by adding to an employee's actual years of service the number of years that the employee would have had to continue working in order to become eligible for normal retirement benefits, adding no more than the number of years the employee had previously worked. Charles Lickteig, who continued working after becoming eligible for retirement at age 55, became disabled and retired at age 61. He filed an age discrimination complaint with respondent (EEOC) after the Plan based his pension on his actual years of service without imputing any additional years. The EEOC filed suit against Kentucky and others (collectively Kentucky), arguing that the Plan failed to impute years solely because Lickteig became disabled after age 55. The District Court granted Kentucky summary judgment, holding that the EEOC could not establish age discrimination, but the Sixth Circuit ultimately reversed on the ground that the Plan violated the Age Discrimination in Employment Act of 1967 (ADEA).

*Held:* Kentucky's system does not discriminate against workers who become disabled after becoming eligible for retirement based on age. Pp. 4–14.

(a) The ADEA forbids an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age.*" 29 U. S. C.

Syllabus

§623(a)(1) (emphasis added).  A plaintiff claiming age-related "dispa-
rate treatment" (*i.e., intentional* discrimination) must prove that age
"*actually motivated* the employer's decision."    *Hazen Paper Co.* v.
*Biggins*, 507 U. S. 604, 610 (emphasis added).  In *Hazen Paper,* the
Court found that, without evidence of intent, a dismissal based on
pension status was not a dismissal "because . . . of age," *id.,* at 611–
612, noting that, though pension status depended upon years of ser-
vice, and years of service typically go hand in hand with age, the two
concepts are "analytically distinct," *id.,* at 611.  And the dismissal at
issue there, if based purely on pension status, would not embody the
evils prompting the ADEA: It was not based on a "prohibited stereo-
type" of older workers, did not produce any "attendant stigma" to
those workers, and was not "the result of an inaccurate and denigrat-
ing generalization about age."  *Id.*, at 612.  However, the Court noted
that discrimination based on pension status could violate the ADEA
if pension status was a "proxy for age."  *Id.*, at 613.  Pp. 4–6.
   (b) Applying *Hazen Paper,* the circumstances here, taken together,
show that the differences in treatment in this particular instance
were not "actually motivated" by age.  (1) Age and pension status re-
main "analytically distinct" concepts.  (2) Here, several background
circumstances eliminate the possibility that pension status serves as
a "proxy for age."  Rather than an individual employment decision, at
issue here are complex systemwide rules involving not wages, but
pensions—a benefit the ADEA treats somewhat more flexibly and le-
niently in respect to age.  Further, Congress has otherwise approved
programs, such as Social Security Disability Insurance, that calculate
disability benefits using a formula that expressly takes account of
age.  (3) The disparity here has a clear non-age-related rationale.
The Plan's disability rules track Kentucky's "normal retirement"
rules by imputing *only* those additional years of service needed to
bring the disabled worker's total to 20 or to the number of years that
the individual would have worked had he worked to age 55.  Thus,
the disability rules' purpose is to treat a disabled worker as though
he had become disabled after, rather than before, he had become eli-
gible for "normal retirement" benefits.  Age factors into the disability
calculation only because the normal retirement rules themselves
permissibly consider age.  The Plan simply seeks to treat disabled
employees as if they had worked until the point at which they would
be eligible for a normal pension.  Thus, the disparity turns upon pen-
sion eligibility and nothing more.  (4) Although the Plan placed an
older worker at a disadvantage here, in other cases, the rules can
work to the advantage of older workers, who may get a bigger boost
of imputed years than younger workers. (5) Kentucky's system does
not rely on the sorts of stereotypical assumptions, *e.g.,* the work ca-

Syllabus

pacity of "older" workers *relative to* "younger" workers, that the ADEA sought to eradicate. The Plan's "assumptions" that no disabled worker would have continued to work beyond the point at which he was both disabled and pension eligible do not involve age-related stereotypes, but apply equally to all workers regardless of age. (6) The nature of the Plan's eligibility requirements means that, unless Kentucky were severely to cut the benefits to disabled workers who are not yet pension eligible, it would have to increase the benefits available to disabled, pension-eligible workers, while lacking any clear criteria for determining how many extra years to impute for those already 55 or older. The difficulty of finding a remedy that can both correct the disparity and achieve the Plan's legitimate objective—providing each disabled worker with a sufficient retirement benefit—further suggests that this objective, not age, "actually motivated" the Plan.

The Court's opinion in no way unsettles the rule that a statute or policy that facially discriminates based on age suffices to show disparate treatment under the ADEA. The Court is dealing with the quite special case of differential treatment based on *pension status,* where pension status—with the explicit blessing of the ADEA—itself turns, in part, on age. Further, the rule for dealing with this sort of case is clear: Where an employer adopts a pension plan that includes age as a factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a claim under the ADEA, must adduce sufficient evidence to show that the differential treatment was "actually motivated" by *age,* not pension status. Pp. 6–11.

(c) The Federal Government's additional arguments are rejected. Since *Hazen Paper* provides the relevant precedent here, an ADEA amendment made in light of *Public Employees Retirement System of Ohio* v. *Betts*, 492 U. S. 158, is beside the point. And a contrary interpretation contained in an EEOC regulation and its compliance manual does not lead to a different conclusion. Pp. 11–13.

467 F. 3d 571, reversed.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SOUTER, and THOMAS, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which SCALIA, GINSBURG, and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1037

KENTUCKY RETIREMENT SYSTEMS, ET AL., PETITIONERS *v.* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 19, 2008]

JUSTICE BREYER delivered the opinion of the Court.

The Commonwealth of Kentucky permits policemen, firemen, and other "hazardous position" workers to retire and to receive "normal retirement" benefits after either (1) working for 20 years; or (2) working for 5 years and attaining the age of 55. See Ky. Rev. Stat. Ann. §§16.576, 16.577(2) (Lexis 2003), 61.592(4) (Lexis Supp. 2003). It permits those who become seriously disabled but have not otherwise become eligible for retirement to retire immediately and receive "disability retirement" benefits. See §16.582(2)(b) (Lexis 2003). And it treats some of those disabled individuals more generously than it treats some of those who became disabled only after becoming eligible for retirement on the basis of age. The question before us is whether Kentucky's system consequently discriminates against the latter workers "because of . . . age." Age Discrimination in Employment Act of 1967 (ADEA or Act), §4(a)(1), 81 Stat. 603, 29 U. S. C. §623(a)(1). We conclude that it does not.

## I

## A

Kentucky has put in place a special retirement plan (Plan) for state and county employees who occupy "[h]azardous position[s]," *e.g.,* active duty law enforcement officers, firefighters, paramedics, and workers in correctional systems. See Ky. Rev. Stat. Ann. §61.592(1)(a) (Lexis Supp. 2003). The Plan sets forth two routes through which such an employee can become eligible for what is called "normal retirement" benefits. The first makes an employee eligible for retirement after 20 years of service. The second makes an employee eligible after only 5 years of service provided that the employee has attained the age of 55. See §§16.576, 16.577(2), 61.592(4). An employee eligible under either route will receive a pension calculated in the same way: Kentucky multiplies years of service times 2.5% times final preretirement pay. See §16.576(3).

Kentucky's Plan has special provisions for hazardous position workers who become disabled but are not yet eligible for normal retirement. Where such an employee has worked for five years or became disabled in the line of duty, the employee can retire at once. See §§16.576(1), 16.582(2) (Lexis 2003). In calculating that employee's benefits Kentucky will add a certain number of ("imputed") years to the employee's actual years of service. The number of imputed years equals the number of years that the disabled employee would have had to continue working in order to become eligible for normal retirement benefits, *i.e.*, the years necessary to bring the employee up to 20 years of service or to at least 5 years of service when the employee would turn 55 (whichever number of years is lower). See §16.582(5)(a) (Lexis 2003). Thus, if an employee with 17 years of service becomes disabled at age 48, the Plan adds 3 years and calculates the benefits as if the employee had completed 20 years of service. If an em-

ployee with 17 years of service becomes disabled at age 54, the Plan adds 1 year and calculates the benefits as if the employee had retired at age 55 with 18 years of service.

The Plan also imposes a ceiling on imputed years equal to the number of years the employee has previously worked (*i.e.*, an employee who has worked eight years cannot receive more than eight additional imputed years), see §16.582(5)(a); it provides for a certain minimum payment, see §16.582(6) (Lexis 2003); and it contains various other details, none of which is challenged here.

## B

Charles Lickteig, a hazardous position worker in the Jefferson County Sheriff's Department, became eligible for retirement at age 55, continued to work, became disabled, and then retired at age 61. The Plan calculated his annual pension on the basis of his actual years of service (18 years) times 2.5% times his final annual pay. Because Lickteig became disabled after he had already become eligible for normal retirement benefits, the Plan did not impute any additional years for purposes of the calculation.

Lickteig complained of age discrimination to the Equal Employment Opportunity Commission (EEOC); and the EEOC then brought this age discrimination lawsuit against the Commonwealth of Kentucky, Kentucky's Plan administrator, and other state entities (to whom we shall refer collectively as "Kentucky"). The EEOC pointed out that, if Lickteig had become disabled before he reached the age of 55, the Plan, in calculating Lickteig's benefits would have imputed a number of additional years. And the EEOC argued that the Plan failed to impute years solely because Lickteig became disabled after he reached age 55.

The District Court, making all appropriate evidence-related assumptions in the EEOC's favor, see Fed. Rule Civ. Proc. 56, held that the EEOC could not establish age

discrimination; and it granted summary judgment in the defendants' favor.  A panel of the Sixth Circuit affirmed that judgment.  *EEOC* v. *Jefferson Cty. Sheriff's Dept.,* 424 F. 3d 467 (2005).  The Sixth Circuit then granted rehearing en banc, held that Kentucky's Plan *did* violate the ADEA, and reversed and remanded for further proceedings.  467 F. 3d 571 (2006).

Kentucky sought certiorari.  In light of the potentially serious impact of the Circuit's decision upon pension benefits provided under plans in effect in many States, we granted the writ.  See, *e.g.*, Ind. Code §§36–8–8–3.3(b) and (c) (West 2004); Mich. Comp. Laws Ann. §§38.23 and 38.556(2)(d) (West 2005); N. C. Gen. Stat. Ann. §§135–1 and 135–5 (Lexis 2007); Pa. Stat. Ann., Tit. 7, §§5102 and 5704 (Purdon Supp. 2007), Tenn. Code Ann. §8–36–501(c)(3) (Supp. 2007).  See also Reply Brief for Petitioners 20–21 (predicting, *inter alia*, large increase in pension liabilities, potential reduction in benefits for all disabled persons, or both); Brief for National Association of State Retirement Administrators et al. as *Amici Curiae* 8–14 (same).

## II

The ADEA forbids an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age.*"  29 U. S. C. §623(a)(1) (emphasis added).  In *Hazen Paper Co.* v. *Biggins*, 507 U. S. 604 (1993), the Court explained that where, as here, a plaintiff claims age-related "disparate treatment" (*i.e., intentional* discrimination "because of . . . age") the plaintiff must prove that age "*actually motivated* the employer's decision."  *Id.,* at 610 (emphasis added); see also *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U. S. 133, 141 (2000).  The Court noted that "[t]he employer may have

relied upon a formal, facially discriminatory policy requir-
ing adverse treatment" because of age, or "the employer
may have been motivated by [age] on an ad hoc, informal
basis." *Hazen Paper*, 507 U. S., at 610. But "[w]hatever
the employer's decisionmaking process," a plaintiff alleg-
ing disparate treatment cannot succeed unless the em-
ployee's age "*actually played a role in that process and had
a determinative influence on the outcome.*" *Ibid.* (emphasis
added). Cf. *Smith* v. *City of Jackson*, 544 U. S. 228, 239–
240 (2005) (plurality opinion) (describing "disparate-
impact" theory, not here at issue, which focuses upon
unjustified discriminatory results).

In *Hazen Paper* the Court considered a disparate treat-
ment claim that an employer had unlawfully dismissed a
62-year-old employee with over 9½ years of service in
order to avoid paying pension benefits that would have
vested after 10 years. The Court held that, without more
evidence of intent, the ADEA would not forbid dismissal of
the claim. A dismissal based on pension status was not a
dismissal "because . . . of age." 507 U. S., at 611–612. Of
course, pension status depended upon years of service, and
years of service typically go hand in hand with age. *Id.,* at
611. But the two concepts were nonetheless "analytically
distinct." *Ibid.* An employer could easily "take account of
one while ignoring the other." *Ibid.* And the dismissal in
question, if based purely upon pension status (related to
years of service), would not embody the evils that led
Congress to enact the ADEA in the first place: The dis-
missal was not based on a "prohibited stereotype" of older
workers, did not produce any "attendant stigma" to those
workers, and was not "the result of an inaccurate and
denigrating generalization about age." *Id.,* at 612.

At the same time, *Hazen Paper* indicated that discrimi-
nation on the basis of pension status could *sometimes* be
unlawful under the ADEA, in particular where pension
status served as a "proxy for age." *Id.,* at 613. Suppose,

for example, an employer "target[ed] employees with a particular pension status on the assumption that these employees are likely to be older." *Id*., at 612–613. In such a case, *Hazen Paper* suggested, age, not pension status, would have "actually motivated" the employer's decision-making. *Hazen Paper* also left open "the special case where an employee is about to vest in pension benefits as a result of his *age*, rather than years of service." *Id*., at 613. We here consider a variation on this "special case" theme.

## III

Kentucky's Plan turns normal pension eligibility *either* upon the employee's having attained 20 years of service alone *or* upon the employees having attained 5 years of service and reached the age of 55. The ADEA permits an employer to condition pension eligibility upon age. See 29 U. S. C. A. §623(*l*)(1)(A)(i) (Supp. 2007). Thus we must decide whether a plan that (1) lawfully makes age in part a condition of pension eligibility, and (2) treats workers differently in light of their pension status, (3) *automatically* discriminates *because of* age. The Government argues "yes." But, following *Hazen Paper'*s approach, we come to a different conclusion. In particular, the following circumstances, taken together, convince us that, in this particular instance, differences in treatment were not "actually motivated" by age.

*First*, as a matter of pure logic, age and pension status remain "analytically distinct" concepts. *Hazen Paper*, 507 U. S., at 611. That is to say, one can easily conceive of decisions that are actually made "because of" pension status and not age, even where pension status is itself based on age. Suppose, for example that an employer pays all retired workers a pension, retirement eligibility turns on age, say 65, and a 70-year-old worker retires. Nothing in language or in logic prevents one from concluding that

the employer has begun to pay the worker a pension, not because the worker is over 65, but simply because the worker has retired.

*Second,* several background circumstances eliminate the possibility that pension status, though analytically distinct from age, nonetheless serves as a "proxy for age" in Kentucky's Plan. Cf. *id.,* at 613. We consider not an individual employment decision, but a set of complex systemwide rules. These systemic rules involve, not wages, but pensions—a benefit that the ADEA treats somewhat more flexibly and leniently in respect to age. See, *e.g.,* 29 U. S. C. A. §623(*l*)(1)(A)(i) (Supp. 2007) (explicitly allowing pension eligibility to turn on age); 29 U. S. C. §623(*l*)(2)(A) (allowing employer to consider (age-related) pension benefits in determining level of severance pay); §623(*l*)(3) (allowing employer to consider (age-related) pension benefits in determining level of long-term disability benefits). And the specific benefit at issue here is offered to all hazardous position workers on the same nondiscriminatory terms *ex ante.* That is to say, every such employee, when hired, is promised disability retirement benefits should he become disabled prior to the time that he is eligible for normal retirement benefits.

Furthermore, Congress has otherwise approved of programs that calculate permanent disability benefits using a formula that expressly takes account of age. For example, the Social Security Administration now uses such a formula in calculating Social Security Disability Insurance benefits. See, *e.g.,* 42 U. S. C. §415(b)(2)(B)(iii); 20 CFR §404.211(e) (2007). And until (and in some cases after) 1984, federal employees received permanent disability benefits based on a formula that, in certain circumstances, did not just consider age, but effectively imputed years of service only to those disabled workers younger than 60. See 5 U. S. C. §8339(g) (2006 ed.); see also Office of Personnel Management, Disability Retirement Under the

Civil Service Retirement System, Retirement Facts 4, p. 3 (rev. Nov. 1997), on line   at http://www.opm.gov/forms/ pdfimage/RI83-4.pdf (as visited June 16, 2008, and available in Clerk of Court's case file).

*Third,* there is a clear non-age-related rationale for the disparity here at issue.  The manner in which Kentucky calculates disability retirement benefits is in every important respect but one identical to the manner in which Kentucky calculates normal retirement benefits.  The one significant difference consists of the fact that the Plan imputes additional years of service to disabled individuals. But the Plan imputes *only* those years needed to bring the disabled worker's years of service to 20 or to the number of years that the individual would have worked had he worked to age 55.  The disability rules clearly track Kentucky's normal retirement rules.

It is obvious, then, that the whole purpose of the disability rules is, as Kentucky claims, to treat a disabled worker as though he had become disabled after, rather than before, he had become eligible for normal retirement benefits.  Age factors into the disability calculation only because the normal retirement rules themselves permissibly include age as a consideration.  No one seeking to help disabled workers in the way that Kentucky's rules seek to help those workers would care whether Kentucky's normal system turned eligibility in part upon age or upon other, different criteria.

That this is so is suggested by the fact that one can readily construct a plan that produces an identical disparity but is age neutral.  Suppose that Kentucky's Plan made eligible for a pension (a) day-shift workers who have 20 years of service, and (b) night-shift workers who have 15 years of service.  Suppose further that the Plan calculates the amount of the pension the same way in either case, which method of calculation depends solely upon years of service (say, giving the worker a pension equal to

$1,000 for each year of service). If the Plan were then to provide workers who become disabled prior to pension eligibility the same pension the workers would have received had they worked until they became pension eligible, the plan would create a disparity between disabled day-shift and night-shift workers: A day-shift worker who becomes disabled *before* becoming pension eligible would, in many instances, end up receiving a bigger pension than a night-shift worker who becomes disabled *after* becoming pension eligible. For example, a day-shift worker who becomes disabled prior to becoming pension-eligible would receive an annual pension of $20,000, while a night-shift worker who becomes disabled after becoming pension-eligible, say, after 16 years of service, would receive an annual pension of $16,000.

The disparity in this example is not "actually motivated" by bias against night-shift workers. Rather, such a disparity, like the disparity in the case before us, is simply an artifact of Plan rules that treat one set of workers more generously in respect to the *timing of their eligibility for normal retirement benefits* but which do not treat them more generously in respect to the *calculation of the amount* of their normal retirement benefits. The example helps to show that the Plan at issue in this case simply seeks to treat disabled employees as if they had worked until the point at which they would be eligible for a normal pension. The disparity turns upon pension eligibility and nothing more.

*Fourth*, although Kentucky's Plan placed an older worker at a disadvantage in this case, in other cases, it can work to the *advantage* of older workers. Consider, for example, two disabled workers, one of whom is aged 45 with 10 years of service, one of whom is aged 40 with 15 years of service. Under Kentucky's scheme, the older worker would actually get a bigger boost of imputed years than the younger worker (10 years would be imputed to

the former, while only 5 years would be imputed to the latter). And that fact helps to confirm that the underlying motive is not an effort to discriminate "because of . . . age."

*Fifth,* Kentucky's system does not rely on any of the sorts of stereotypical assumptions that the ADEA sought to eradicate. It does not rest on any stereotype about the work capacity of "older" workers *relative to* "younger" workers. See, *e.g.*, *General Dynamics Land Systems, Inc.* v. *Cline,* 540 U. S. 581, 590 (2004) (noting that except on one point, all the findings and statements of objectives in the ADEA are "either cast in terms of the effects of age as intensifying over time, or are couched in terms that refer to 'older' workers, explicitly or implicitly *relative to* 'younger' ones" (emphasis added)). The Plan does assume that all disabled workers would have worked to the point at which they would have become eligible for a pension. It also assumes that no disabled worker would have continued working beyond the point at which he was both (1) disabled; and (2) pension eligible. But these "assumptions" do not involve age-related stereotypes, and they apply equally to *all* workers, regardless of age.

*Sixth,* the nature of the Plan's eligibility requirements means that, unless Kentucky were severely to cut the benefits given to disabled workers who are not yet pension eligible (which Kentucky claims it will do if its present Plan is unlawful), Kentucky would have to increase the benefits available to disabled, pension-eligible workers, while lacking any clear criteria for determining how many extra years to impute for those pension-eligible workers who already are 55 or older. The difficulty of finding a remedy that can both correct the disparity and achieve the Plan's legitimate objective—providing each disabled worker with a sufficient retirement benefit, namely, the normal retirement benefit that the worker would receive if he were pension eligible at the time of disability—further suggests that this objective and not age "actually moti-

vated" the Plan.

The above factors all taken together convince us that the Plan does not, on its face, create treatment differences that are "actually motivated" by age. And, for present purposes, we accept the District Court's finding that the Government has pointed to no additional evidence that might permit a factfinder to reach a contrary conclusion. See App. 28–30.

It bears emphasizing that our opinion in no way unsettles the rule that a statute or policy that facially discriminates based on age suffices to show disparate treatment under the ADEA. We are dealing today with the quite special case of differential treatment based on *pension status*, where pension status—with the explicit blessing of the ADEA—itself turns, in part, on age. Further, the rule we adopt today for dealing with this sort of case is clear: Where an employer adopts a pension plan that includes age as a factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a disparate treatment claim under the ADEA, must come forward with sufficient evidence to show that the differential treatment was "actually motivated" by *age*, not pension status. And our discussion of the factors that lead us to conclude that the Government has failed to make the requisite showing in this case provides an indication of what a plaintiff might show in other cases to meet his burden of proving that differential treatment based on pension status is in fact discrimination "because of" age.

## IV

The Government makes two additional arguments. First, it looks for support to an amendment that Congress made to the ADEA after this Court's decision in *Public Employees Retirement System of Ohio* v. *Betts*, 492 U. S. 158 (1989). In *Betts*, the employer denied a worker disability benefits on the ground that its bona fide benefit

program provided disability benefits only to workers who became disabled prior to age 60, and the worker in that case became disabled at age 61. *Id.,* at 163. The ADEA at that time exempted from its prohibitions employment decisions taken pursuant to the terms of "'any bona fide employee benefit plan . . . which is not a subterfuge to evade the purposes of' the Act." *Id.,* at 161 (quoting 29 U. S. C. §623(f)(2) (1982 ed., Supp. V)). And the Court held that the employer's decision fell within that exception. 492 U. S., at 182. Subsequently Congress amended the ADEA to make clear that it covered age-based discrimination in respect to all employee benefits. See Older Workers Benefit Protection Act, §102, 104 Stat. 978, 29 U. S. C. §630(*l*) (2000 ed.). Congress replaced the "not a subterfuge" exception with a provision stating that age-based disparities in the provision of benefits are lawful only when they are justified in respect to cost savings. *Id.*, at 978–979; 29 U. S. C. §623(f)(2)(B)(i).

We agree with the Government that the amendment broadened the field of employer actions subject to antidiscrimination rules and it narrowed the statutorily available justifications for age-related differences. But these facts cannot help the Government here. We do not dispute that ADEA prohibitions apply to the Plan at issue, and our basis for finding the Plan lawful does not rest upon amendment-related justifications. Rather, we find that the discrimination is not "actually motivated" by age. Thus *Hazen Paper*, not *Betts,* provides relevant precedent. And the amendment cited by the Government is beside the point.

Second, the Government says that we must defer to a contrary EEOC interpretation contained in an EEOC regulation and compliance manual. The regulation, however, says only that providing "the same level of benefits to older workers as to younger workers" does *not* violate the Act. 29 CFR §1625.10(a)(2) (2007). The Government's

interpretation of this language is not entitled to deference because, on its face, the regulation "does little more than restate the terms of the statute itself." *Gonzales* v. *Oregon*, 546 U. S. 243, 257 (2006) (denying deference to an agency interpretation of its own regulation in light of the "near equivalence" of the statute and regulation).

The Compliance Manual provides more explicitly that benefits are not "equal" insofar as a plan "reduces or eliminates benefits based on a criterion that is explicitly defined (in whole or in part) by age." 2 EEOC Compliance Manual §3, p. 627:00041 (2001) (bold typeface deleted). And the Compliance Manual further provides that "[b]asing disability retirement benefits on the number of years a disabled employee *would have worked* until normal retirement age by definition gives more constructive years of service to younger than to older employees" and thus violates the Act. See *id.,* at 627:0010.

These statements, while important, cannot lead us to a different conclusion. See *National Railroad Passenger Corporation* v. *Morgan*, 536 U. S. 101, 111, n. 6 (2002) (noting that compliance manuals are "'"entitled to respect" under our decision in *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944)'"); see also *Christensen* v. *Harris County*, 529 U. S. 576, 587 (2000). Following *Hazen Paper,* we interpret the Act as requiring a showing that the discrimination at issue "actually motivated" the employer's decision. Given the reasons set forth in Part III, *supra,* we conclude that evidence of that motivation was lacking here. And the EEOC's statement in the Compliance Manual that it automatically reaches a contrary conclusion—a statement that the Manual itself makes little effort to justify—lacks the necessary "power to persuade" us. *Skidmore* v. *Swift & Co.,* 323 U. S. 134, 140 (1944).

V

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 06–1037

KENTUCKY RETIREMENT SYSTEMS, ET AL.,
PETITIONERS *v.* EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 19, 2008]

JUSTICE KENNEDY, with whom JUSTICE SCALIA, JUSTICE GINSBURG, and JUSTICE ALITO join, dissenting.

The Court today ignores established rules for interpreting and enforcing one of the most important statutes Congress has enacted to protect the Nation's work force from age discrimination, the Age Discrimination in Employment Act of 1967 (ADEA or Act), 81 Stat. 602, as amended, 29 U. S. C. §621 *et seq.* That Act prohibits employment actions that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." §623(a)(1). In recent years employers and employees alike have been advised by this Court, by most Courts of Appeals, and by the agency charged with enforcing the Act, the Equal Employment Opportunity Commission (EEOC), that the most straightforward reading of the statute is the correct one: When an employer makes age a factor in an employee benefit plan in a formal, facial, deliberate, and explicit manner, to the detriment of older employees, this is a violation of the Act. Disparate treatment on the basis of age is prohibited unless some exemption or defense provided in the Act applies.

The Court today undercuts this basic framework. In doing so it puts the Act and its enforcement on a wrong

course. The decision of the en banc panel of the Court of Appeals for the Sixth Circuit, which the Court reverses, brought that Circuit's case law into line with that of its sister Circuits. See *EEOC* v. *Jefferson Cty. Sheriff's Dept.*, 467 F. 3d 571, 573 (2006) (overturning *Lyon* v. *Ohio Ed. Assn. and Professional Staff Union*, 53 F. 3d 135 (1995)); see also, *e.g.*, *Jankovitz* v. *Des Moines Independent Community School Dist.*, 421 F. 3d 649, 653–655 (CA8 2005); *Abrahamson* v. *Board of Ed. of Wappingers Falls Century School Dist.*, 374 F. 3d 66, 72–73 (CA2 2004); *Arnett* v. *California Public Employees Retirement System*, 179 F. 3d 690, 695–697 (CA9 1999); *Auerbach* v. *Board of Ed. of Harborfields Central School Dist. of Greenlawn*, 136 F. 3d 104, 109–114 (CA2 1998); *Huff* v. *UARCO, Inc.*, 122 F. 3d 374, 387–388 (CA7 1997). By embracing the approach rejected by the en banc panel and all other Courts of Appeals that have addressed this issue, this Court creates unevenness in administration, unpredictability in litigation, and uncertainty as to employee rights once thought well settled. These consequences, and the Court's errors in interpreting the statute and our cases, require this respectful dissent.

Even were the Court correct that Kentucky's facially discriminatory disability benefits plan can be justified by a proper motive, the employer's own submission to us reveals that the plan's discriminatory classification rests upon a stereotypical assumption that itself violates the Act and the Court's own analytical framework.

As a threshold matter, all should concede that the paradigm offered to justify the statute is a powerful one: The young police officer or firefighter with a family is disabled in the heroic performance of his or her duty. Disability payments are increased to account for unworked years of service. What the Court overlooks, however, is that a 61-year-old officer or firefighter who is disabled in the same heroic action receives, in many instances, a lower payment

and for one reason alone: By explicit command of Kentucky's disability plan age is an express disadvantage in calculating the disability payment.

This is a straightforward act of discrimination on the basis of age. Though the Commonwealth is entitled by the law, in some instances, to defend an age-based differential as cost justified, 29 U. S. C. §623(f)(2)(B)(ii), that has yet to be established here. What an employer cannot do, and what the Court ought not to do, is to pretend that this explicit discrimination based on age is somehow consistent with the broad statutory and regulatory prohibition against disparate treatment based on age.

I

The following appears to be common ground for both sides of the dispute: Kentucky operates dual retirement systems for employees in hazardous occupations. An employee is eligible for normal retirement if he or she has accumulated 20 years of service with the Commonwealth, or is over age 55 and has accumulated at least 5 years of service. If the employee can no longer work as a result of a disability, however, he or she is entitled to receive disability retirement. Employees who are eligible for normal retirement benefits are ineligible for disability retirement. See Ky. Rev. Stat. Ann. §§16.576, 16.577(2) (Lexis 2003), 61.592(4) (Lexis Cum. Supp. 2003).

The distinction between normal and disability retirement is not just a difference of nomenclature. Under the normal retirement system benefits are calculated by multiplying a percentage of the employee's pay at retirement by years of service. See §16.576(3) (Lexis 2003). Under the disability system the years-of-service multiplier includes not only the employee's actual years of service but also the number of years it would have taken the employee to become eligible for normal retirement (subject to a cap equal to the number of actual years served). See

§16.582(5)(a). In other words employees in the normal retirement system are compensated based solely on their actual years of service; but employees in the disability retirement system get a bonus, which accounts for the number of years the employee would have worked had he or she remained healthy until becoming eligible to receive normal retirement benefits.

Whether intended or not, the result of these divergent benefits formulae is a system that, in some cases, compensates otherwise similarly situated individuals differently on the basis of age. Consider two covered workers, one 45 and one 55, both with five years of service with the Commonwealth and an annual salary of $60,000. If we assume both become disabled in the same accident, the 45-year-old will be entitled to receive $1,250 in monthly benefits; the 55-year-old will receive $625, just half as much. The benefit disparity results from the Commonwealth's decision, under the disability retirement formula, to credit the 45-year-old with 5 years of unworked service (thereby increasing the appliable years-service-multipler to 10 years), while the 55-year-old's benefits are based only on actual years of service (5 years). In that instance age is the only factor that accounts for the disparate treatment.

True, age is not a factor that reduces benefits in every case. If a worker has accumulated 20 years of service with the Commonwealth before he or she becomes disabled, age plays no role in the benefits calculation. But there is no question that, in many cases, a disabled worker over the age of 55 who has accumulated fewer than 20 years of service receives a lower monthly stipend than otherwise similarly situated workers who are under 55. The Court concludes this result is something other than discrimination on the basis of age only by ignoring the statute and our past opinions.

KENNEDY, J., dissenting

## II

It is difficult to find a clear rule of law in the list of policy arguments the Court makes to justify its holding. The difficulty is compounded by the Court's own analysis. The Court concedes that, in this case, Kentucky's plan "placed an older worker at a disadvantage," *ante*, at 9; yet it proceeds to hold that the Commonwealth's disparate treatment of its workers was not "'actually motivated' by age," *ante*, at 10. The Court's apparent rationale is that, even when it is evident that a benefits plan discriminates on its face on the basis of age, an ADEA plaintiff still must provide additional evidence that the employer acted with an "underlying motive," *ante*, at 9, to treat older workers less favorably than younger workers.

The Court finds no support in the text of the statute. In the wake of *Public Employees Retirement System of Ohio* v. *Betts*, 492 U. S. 158 (1989), where the Court held that bona fide employee benefit plans were exempt from the coverage of the ADEA, Congress amended the Act to provide that an employee benefit plan that discriminates on the basis of age is unlawful, except when the employer establishes entitlement to one of the affirmative defenses Congress has provided. See Older Workers Benefit Protection Act (OWBPA), 104 Stat. 978, codified at 29 U. S. C. §623(f). As a result of the OWBPA, an employer cannot operate an employee benefit plan in a manner that "discriminate[s] against any individual . . . because of such individual's age," §623(a), except when the plan is a "voluntary early retirement incentive plan" or when "the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker," §§623(f)(2)(B)(i)–(ii); see generally B. Lindemann & D. Kadue, Age Discrimination in Employment Law 175 (2003). Under any common understanding of the statute's terms a disability plan that pays older workers less than younger workers on the basis

of age "discriminate[s] . . . because of . . . age." That is how the agency that administers the statute, the EEOC, understands it. See 2 EEOC Compliance Manual §3, p. 627:0004 (2001) ("[B]enefits will not be equal where a plan reduces or eliminates benefits based on a criterion that is explicitly defined (in whole or in part) by age"). And the employer here has not shown that any of the affirmative defenses or exemptions to the Act applies. That should be the end of the matter; the employer is liable unless it can make such a showing.

The Court's holding stems, it asserts, from a statement in *Hazen Paper Co.* v. *Biggins*, 507 U. S. 604 (1993), that an employment practice discriminates only if it is "'actually motivated'" by the protected trait. *Ante*, at 4 (quoting *Hazen Paper*, 507 U. S., at 610; emphasis deleted). If this phrase had been used without qualification, the Court's interpretation of it might have been justified. If one reads the relevant passage in full (with particular emphasis on the second sentence), however, *Hazen Paper* makes quite clear that no additional proof of motive is required in an ADEA case once the employment policy at issue is deemed discriminatory on its face. The Court said this:

> "In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. *See, e.g.*, *United States Postal Service Bd. of Governors* v. *Aikens*, 460 U. S. 711 (1983); *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 252–256 (1981); *Furnco Constr. Corp.* v. *Waters*, 438 U. S. 567, 576–578 (1978). The employer may have relied upon a formal, facially discriminatory policy requiring adverse treatment of employees with that trait. *See, e.g.*, [*Trans World Airlines, Inc.* v.] *Thurston*, [469 U. S. 111 (1985)]; *Los Angeles Dept. of Water and Power* v. *Manhart*, 435 U. S. 702, 704–718 (1978). Or the em-

ployer may have been motivated by the protected trait on an ad hoc, informal basis. *See, e.g., Anderson* v. *Bessemer City*, 470 U. S. 564 (1985); *Teamsters* [v. *United States*, 431 U. S. 324, 334–343 (1977)]. Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Ibid.*

In context the paragraph identifies a decision made in reliance on a "facially discriminatory policy requiring adverse treatment of employees with [a protected] trait" as a type of employment action that is "actually motivated" by that trait. By interpreting *Hazen Paper* to say that a formal, facial, explicit, mandated, age-based differential does not suffice to establish a disparate-treatment violation (subject to statutory defenses and exemptions), it misconstrues the precedent upon which its entire theory of this case is built. The Court was right in *Hazen Paper* and is wrong here.

At a minimum the Court should not cite *Hazen Paper* to support what it now holds. Its conclusion that no disparate-treatment violation has been established here conflicts with the longstanding rule in ADEA cases. The rule—confirmed by the quoted text in *Hazen Paper*—is that once the plaintiff establishes that a policy discriminates on its face, no additional proof of a less-than-benign motive for the challenged employment action is required. For if the plan discriminates on its face, it is obvious that decisions made pursuant to the plan are "actually motivated" by age. The EEOC (or the employee) must prevail unless the employer can justify its action under one of the enumerated statutory defenses or exemptions.

Two cases cited in *Hazen Paper* as examples of "formal, facially discriminatory polic[ies]," stand for this proposi-

tion. See *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111 (1985); *Los Angeles Dept. of Water and Power* v. *Manhart*, 435 U. S. 702 (1978).

In *Thurston*, the Court considered whether Trans World Airlines' transfer policy for older pilots violated the ADEA. The policy allowed pilots to continue working for the airline past the mandatory retirement age of 60 if they transferred to the position of flight engineer. 469 U. S., at 115–116. But the 60-year-old pilot had to bid for the position. Under the bid procedures a pilot who became ineligible to remain at the controls on account of a disability (or even outright incompetence) had priority over a pilot forced out due to age. *Id.*, at 116–117. The Court held the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), which is used to determine whether there was a discriminatory motive at play, had no application because the policy was "discriminatory on its face." 469 U. S., at 121.

*Manhart*, a Title VII case, involved a municipal employees' retirement plan that forced female employees to make larger contributions than their male counterparts. The Court noted that even if there were no evidence that the policy had a discriminatory "effect," "that evidence does not defeat the claim that the practice, on its face, discriminated against every individual woman employed by the Department." 435 U. S., at 716.

Just as the majority misunderstands *Hazen Paper*'s reference to employment practices that are "actually motivated" by age, so too does it overstate what the *Hazen Paper* Court meant when it observed that pension status and age are "analytically distinct." 507 U. S., at 611. The Court now reads this language as creating a virtual safe harbor for policies that discriminate on the basis of pension status, even when pension status is tied directly to age and then linked to another type of benefit program. The *Hazen Paper* Court did not allow, or support, this

result. In *Hazen Paper* pension status and age were "analytically distinct" because the employee's eligibility to receive a pension formally had nothing to do with age; pension status was tied solely to years of service. The Court recognized that age and pension status were correlated (because older workers were more likely to be pension eligible); but the Court found the plan to be facially neutral with regard to age precisely because age and pension status were not expressly linked under the terms of the plan. See *id.*, at 613 (noting that "we do not consider the special case where an employee is about to vest in pension benefits as a result of his *age*, rather than years of service"). In order to prove disparate-treatment liability the *Hazen Paper* Court held that the plaintiff needed to provide additional evidence that his termination in fact was motivated by age. *Id.*, at 613–614.

The saving feature that was controlling in *Hazen Paper* is absent here. This case is the opposite of *Hazen Paper*. Here the age distinction is active and present, not superseded and absent. Age is a determining factor of pension eligibility for all workers over the age of 55 who have over 5 (but less than 20) years of service; and pension status, in turn, is used to determine eligibility for disability benefits. For these employees, pension status and age are not "analytically distinct" in any meaningful sense; they merge into one category. When it treats these employees differently on the basis of pension eligibility, Kentucky facially discriminates on the basis of age. Were this not the case, there would be no facial age discrimination if an employer divided his employees into two teams based upon age—putting all workers over the age of 65 on "Team A" and all other workers on "Team B"—and then paid Team B members twice the salary of their Team A counterparts, not on the basis of age (the employer would declare) but of team designation. Neither *Hazen Paper* nor the plain text of the ADEA can be read to permit this result.

The closest the Court comes to reconciling its holding with the actual text of the statute is its citation to the Act's exemption allowing employers to condition pension eligibility on age. *Ante*, at 7. Of course, the fact that it invokes an exemption is a concession by the Court that the Act otherwise would condemn the age-based classification Kentucky's disability plan makes. But the exemption provides no support for the Court's holding in any event. Its coverage is limited to "employee pension benefit plan[s] [that] provid[e] for the attainment of a minimum age as a condition of eligibility for normal or early retirement benefits." See 29 U. S. C. A. §623(*l*)(1)(A)(i) (Supp. 2007). There is no farther reaching exemption for subsequent employment decisions based upon pension eligibility. And to the extent the Court finds such a loophole to be implicit in the text of the statute, a disability benefits program of the sort at issue here is not the only type of employment policy that fits through it. If the ADEA allows an employer to tie disability benefits to an age-based pension status designation, that same designation can be used to determine wages, hours, heath care benefits, reimbursements, job assignments, promotions, office space, transportation vouchers, parking privileges, and any other conceivable benefit or condition of employment.

## III

The Court recognizes some of the difficulties with its position and seeks to limit its holding, yet it does so in ways not permitted by statute or our previous employment discrimination cases.

The Court notes that age is not the sole determining factor of pension eligibility but is instead just one factor embedded in a set of "complex system-wide rules." *Ante*, at 7. There is no suggestion in our prior ADEA cases, however, and certainly none in our related Title VII jurisprudence, that discrimination based on a protected trait is

permissible if the protected trait is one among many variables.

This is quite evident when the protected trait is necessarily a controlling, outcome-determinative factor in calculating employee benefits. In *Manhart*, for instance, sex was not the only factor determining how much an employee was required to contribute to the pension plan on a monthly basis; the employee's salary, age, and length of service were also variables in the equation. 435 U. S., at 705; Brief for Petitioners in *Los Angeles Dept. of Water and Power* v. *Manhart*, O. T. 1977, No. 76–1810, p. 23. And even though the employer's decision to require higher contributions from female employees was based upon an actuarially sound premise—that women have longer life expectancies than men—the Court held that the plan discriminated on its face. 435 U. S., at 711.

Similarly, we have said that the ADEA's substantive prohibitions, which were "derived *in haec verba* from Title VII," *Lorillard* v. *Pons*, 434 U. S. 575, 584 (1978), require the employer "to ignore an employee's age (absent a statutory exemption or defense)," *Hazen Paper*, 507 U. S., at 612. This statement perhaps has been qualified by the Court's subsequent holding in *General Dynamics Land Systems, Inc.* v. *Cline*, 540 U. S. 581 (2004), that the ADEA does not forbid employers from discriminating in favor of older workers to the detriment of younger workers. Reasonable minds may have disagreed about the merits of *Cline*'s holding. See *id.*, at 601 (SCALIA, J., dissenting); see also *id.*, at 602 (THOMAS, J., dissenting). But *Cline* does not dictate the path the Court chooses here. For it is one thing to interpret a statute designed to combat age discrimination in a way that benefits older workers to the detriment of younger workers; it is quite another to do what the Court does in this case, which is to interpret the ADEA to allow a discriminatory employment practice that disfavors older workers while favoring

younger ones. The Court, moreover, achieved the result in *Cline* by reading the word "age" to mean "old age"—*i.e.*, by reading "discriminat[ion] . . . because of [an] individual's age," 29 U. S. C. §623(a), to mean discrimination because of an individual's advanced age. See *Cline, supra*, at 596. Here the Court seems to adopt a new definition of the term "discriminate" by holding that there is no discrimination on the basis of a protected trait if the trait is one among several factors that bear upon how an employee is treated. There is no principled way to draw this distinction, and the Court does not attempt to do so. Cf. *Manhart, supra*, at 710 ("[T]here is no reason to believe that Congress intended a special definition of discrimination in the context of employee group insurance coverage").

The Court recites what it sees as "several background circumstances [that] eliminate the possibility that pension status, though analytically distinct from age, nonetheless serves as a 'proxy for age' in Kentucky's Plan." *Ante*, at 7. Among these is a "clear non-age-related rationale," *ibid.*, "to treat a disabled worker as though he had become disabled after, rather than before, he had become eligible for normal retirement benefits," *ante*, at 8. There is a difference, however, between a laudable purpose and a rule of law.

An otherwise discriminatory employment action cannot be rendered lawful because the employer's motives were benign. In *Automobile Workers* v. *Johnson Controls, Inc.*, 499 U. S. 187 (1991), the employer had a policy barring all female employees, except those who were infertile, from performing jobs that exposed them to lead. The employer said its policy was designed not to reinforce negative gender stereotypes but to protect female employees' unborn children against the risk of birth defects. *Id.*, at 191. The argument did not prevail. The plan discriminated on its face on the basis of sex, and the employer did not establish a bona fide occupational qualification defense. As a

result, the Court held that the restriction violated Title VII. "[T]he absence of a malevolent motive [did] not convert a facially discriminatory plan into a neutral policy with a discriminatory effect." *Id.*, at 199.

Still, even if our cases allowed the motive qualification the Court puts forth to justify a facial and operative distinction based upon age, the plan at issue here does not survive the Court's own test. We need look no further than the Commonwealth's own brief for evidence that its motives are contrary to the ADEA. In its brief the Commonwealth refers to the 61-year-old complainant in this case, Charles Lickteig, as follows:

> "An employee in Mr. Lickteig's position has had an extra 21 years to devote to making money, providing for himself and his family, saving funds for retirement, and accruing years that will increase his retirement benefits. Thus, the 40-year-old employee is likely to need more of a boost." Brief for Petitioners 23.

The hypothetical younger worker seems entitled to a boost only if one accepts that the younger worker had more productive years of work left in him at the time of his injury than Lickteig did. As an actuarial matter, this assumption may be sound. It is an impermissible basis for differential treatment under the ADEA, however. As we said in *Hazen Paper*, the idea that "productivity and competence decline with old age" is the "very essence of age discrimination." 507 U. S., at 610. By forbidding age discrimination against any "individual," 29 U. S. C. §623(a), the ADEA forbids employers from using the blunt tool of age to assess an employee's future productivity. Cf. *Western Air Lines, Inc.* v. *Criswell*, 472 U. S. 400, 409 (1985) (noting the Labor Department's findings that "the process of psychological and physiological degeneration caused by aging varies with each individual"). Whether this is good public policy in all instances might be debat-

able.  Until Congress sees fit to change the language of the statute, however, there is no principled basis for upholding Kentucky's disability benefits formula.

\*      \*      \*

As explained in this dissent, Kentucky's disability retirement plan violates the ADEA, an Act intended to promote the interests of older Americans.  Yet it is no small irony that it does so, at least in part, because the Commonwealth's normal retirement plan treats older workers in a particularly generous fashion.  Kentucky allows its employees to retire at the age of 55 if they have accumulated only five years of service.  But for this provision, which links age and years of service in a way that benefits older workers, pension eligibility would be a function solely of tenure, not age.  Accordingly, this case would be more like *Hazen Paper*, and the EEOC's case would be much weaker.  Similarly, as the Court notes, *ante*, at 10, Kentucky could avoid any problems by not imputing unworked years of service to any disabled workers, old and young alike.  Neither change to the plan would result in more generous treatment for older workers.  The only difference would be that, under the first example, older workers would lose the option of early retirement, and, under the second, younger workers would see their benefits cut.  These are not the only possible remedies—the Commonwealth could impute unworked years of service to all employees forced into retirement on account of a disability regardless of age.

The Court's desire to avoid construing the ADEA in a way that encourages the Commonwealth to eliminate its early retirement program or to reduce benefits to the policemen and firefighters who are covered under the disability plan is understandable.  But, under our precedents, "'[a] benefit that is part and parcel of the employment relationship may not be doled out in a discrimina-

tory fashion, even if the employer would be free . . . not to provide the benefit at all.'" *Thurston*, 469 U. S., at 121 (quoting *Hishon* v. *King & Spalding*, 467 U. S. 69, 75 (1984)). If Kentucky's facially discriminatory plan is good public policy, the answer is not for this Court to ignore its precedents and the plain text of the statute.

For these reasons, in my view, the judgment of the Court of Appeals should be affirmed and the case remanded for a determination whether the State can assert a cost-justification defense.